## Craft et al v. Crance et al.

Oct. 11, 1940.

As Modified and Extended on Rehearing Jan. 31, 1941.

Charley Prater for appellants.

A. W. Mann and J. G. M. Robinson for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to March, 1930, one of the appellants, John Craft, and his wife, Sarah Craft, jointly owned a house and lot in the city of Ashland, Kentucky, in which they and their two children, a son and a daughter, with

their respective spouses and a brother of Sarah Craft (the appellee, Boyd Crance), all resided. Upon the death of Sarah Craft in March, 1930, her two children inherited her half interest therein, subject to the rights of her surviving husband, the appellant, John Craft. The value of the property is not disclosed by the testimony in the record. At the time of her death Sarah Craft was indebted to a mercantile firm in the sum of $40, and her burial expenses amounted to $150 or more, which sums were collectible out of her half interest in the property. Neither of those amounts was paid on June 29, 1932, on which date the appellant John Craft alone executed a mortgage on the entire property to one of the appellees, T. T. Tanner, a neighboring grocery merchant in the city of Ashland, to secure an alleged indebtedness of $1,500, which the mortgage recites was evidenced by a contemporaneously executed note by John Craft to Tanner for that amount. However, the only note produced at the trial as evidencing that indebtedness was dated more than two years thereafter.

Boyd Crance was a soldier in the World War and he appears to have been unmarried and, as we have said, lived with the Crafts. Some short while before August 19, 1936, he drew from the government, under some right to which he was entitled as a soldier, a sum of money amounting to about $800. He was engaged in no earning occupation and was quite intemperate in his habits, indulging to a considerable extent in the use of intoxicating liquors. At the time of his obtaining his money from the federal government the dwelling house of the Crafts was considerably out of repair and some back taxes were due, and all of the title holders at that time joined in a deed conveying the property to Crance under a promise by him to repair it, pay all of the back taxes, and to reconvey the property upon becoming reimbursed for his outlay, which had the effect to convert that instrument into a mortgage, although in the form of an absolute deed. The execution of the deed was clearly engineered by the appellee Tanner. It was written and acknowledged by his attorney at that time and the one representing him in this case; however, it is not intended by that statement to even intimate that the attorney was a party to any fraud or deception in the procuring of that conveyance. The deed was never actually delivered to Crance, but was left with the attor-

ney, although, perhaps, put to record by the latter in the meantime.

Some two or three months after the execution of that deed Tanner procured Crance to make a conveyance of the property to him (Tanner) and which was done on October 27, 1936, the consideration as recited therein being $1 "and other good and valuable considerations." The Craft heirs having joined their father in the execution of the deed to Crance and his later conveyance to Tanner vested the latter with the legal title to the property. With matters in that condition this action was filed in the Boyd circuit court on June 1, 1938, by John Craft and his son William Craft against Crance, Tanner and the married daughter, who did not join as plaintiff in the action, seeking to cancel the conveyances referred to on the ground that they were obtained by fraud and without consideration, and that Tanner as present legal title holder not only knew the facts with reference to the making of those deeds, but was also the moving spirit in causing them to be made for the fraudulent purpose of obtaining the title in himself to all of the lot, when the only interest he had in it was his mortgage lien on the interest of John Craft therein amounting, according to the proof, to $945, which amount he testified in his deposition was all of the indebtedness due him by any of the owners of the lot for grocery bills, taxes paid by him, or for any other purpose.

The petition alleged the facts, supra, and that the two deeds referred to were procured by the defendant, Tanner, for the eventual fraudulent purpose of acquiring the property which was the final culmination thereof. Tanner's answer was a denial of the material averments of the petition, but he admitted that the mortgage to him by John Craft alone recited a consideration of $1,500, when at that time the debt owed to him by the Crafts for groceries was a much less sum, and which he claims was done at the solicitation of John Craft in order to prevent the creditors of Mrs. Craft from subjecting her half interest to the payment of their debts until payment could be made by her surviving heirs and husband whereby the home would be saved as a residence for the family. However, John Craft and other members of the household testified that it was at the solicitation and request of Tanner that the mortgage was given him by John

Craft, and that he represented at the time that the creditors of the latter's deceased wife were about to enter suit for the collection of their debts and the sale of the property if so made would deprive the occupants of a home.

At any rate the mortgage was given, and four years thereafter without any payments having been made on the mortgage debt, if any (the Crafts denying any indebtedness to Tanner), the conveyance to Crance was made at the behest of Tanner who carried the vendors to the notary before whom it was acknowledged and who at his request had drawn the deed and kept it, as we have stated, without its ever being delivered to Crance. The latter at some period—not disclosed by the record—paid some thirty or forty dollars taxes due against the property, and which was the sum total of his entire outlay. With full and complete knowledge of the facts, as related—the creation of which was almost entirely due to the activities of Tanner—he then procured the deed from Crance, whereby he became the complete owner of the entire property. Upon submission the court dismissed plaintiff's petitions and adjudged Tanner the owner of the property free from all encumbrances or any character of right in and to it by any of the Crafts, and complaining of that judgment they prosecute this appeal.

Perhaps some of the statements we have made are denied by Tanner but many of them (and the most material ones) are admitted by him, and the testimony of plaintiffs upon the issues that he disputes is overwhelmingly in support of our statement of the facts. The deed to Crance, as we have seen, was, as between the parties, nothing but a mortgage and Tanner knew that no part of its consideration had been paid except the taxes paid by Crance amounting to $30 or $40. So that the deed made to him was only a mortgage for that amount, and Tanner also knew that fact although he may not have known the exact amount advanced by Crance. With such knowledge his purchase from Crance vested him with no better title than his vendor possessed, and which was a mortgage for whatever amount Crance had paid. Considering that amount as $30— which was repaid to him by Tanner—then the indebtedness of the latter was increased to the amount of $975 for the security of which he held a mortgage on the en-

tire property for the $30 repaid to Crance, and on half of the property for the $945 due him and secured by his mortgage executed only by John Craft. In that state of the facts it would be most inequitable to adjudge him the unencumbered title to all of the property and entitled to its possession as did the judgment appealed from. In making that statement we do not mean to intimate than an owner of property of any kind may not dispose of it as he pleases, in any manner or for any purpose not forbidden by law, and that if the facts accompanying the transactions involved were bona fide and as represented by the transactions themselves, then the Crafts as vendors would not be permitted to complain thereof. But, as we have seen, the situation is far different from that. Tanner was well aware of the facts when he obtained his deed from Crance and thereby became nominally vested with the title to the property. As matters now stand he gets the half interest owned by Mrs. Craft, burdened, perhaps, with her indebtedness, supra, and which, according to the overwhelming proof in this case, is and was the only consideration which the vendors in the deed to Craft ever intended to secure, plus what he might expend for taxes or for repairing the property, but none of which was expended by him, and Tanner, we repeat, was fully aware of such facts at the time he induced Crance to convey the property to him.

We can not escape the conclusion from this record that the result of the entire transactions was and is the product of the intriguing activities of Tanner from and after the time (and perhaps before then) he obtained his mortgage executed only by John Craft, which purported to encumber the entire property, although the mortgagor owned but a half interest therein. Without elaboration our conclusion is that Tanner is entitled to subject the half interest in the property owned by John Craft to the extinguishment of his mortgage to secure his store account amounting to $945, and that he has a lien on the entire property for the sum of $266.53, representing the amount of taxes paid by him, and that the court should have so adjudged and ordered plaintiff's deed corrected and the land sold instead of dismissing plaintiffs' petition absolutely.

Wherefore, the judgment is reversed, with directions to set it aside, and to enter one as herein indicated.